IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FIROUZ NOURI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 10-CV-801-TCK-FHM |
| ) | |
| JIM FARRIS, Warden,[1] ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate and appears pro se. Respondent filed a response to the petition (Dkt. # 9), and provided the state court record required for resolution of Petitioner's claims. Petitioner filed a reply (Dkt. # 12) to Respondent's response. For the reasons discussed below, the Court finds the petition is barred by the one-year statute of limitations. For that reason, the petition is dismissed with prejudice as time barred.

*BACKGROUND*

The record reflects that at the conclusion of a jury trial, held in Tulsa County District Court, Case No. CF-1998-5137, Petitioner Firouz Nouri was convicted of First Degree Rape. See Dkt. # 1. On September 8, 2000, in accordance with the jury's recommendation, the trial judge sentenced Petitioner to fifty (50) years imprisonment. Id. Petitioner was represented at trial by attorney Patrick Williams.

---

[1] Petitioner is currently in custody at the Lexington Correctional Center, in Lexington, Oklahoma, where Jim Farris is Warden. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, Jim Farris, Warden, is the proper respondent. Therefore, Jim Farris, Warden, is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

Represented by attorney Gloyd McCoy, Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA).  He raised seven (7) propositions of error, as follows:

Proposition 1:  There can be no harmless error in this case.

Proposition 2:  Mr. Nouri was denied a fair trial by the introduction of prejudicial other crimes evidence.

Proposition 3:  Mr. Nouri was denied a fair trial due to improper prosecutorial comments.

Proposition 4:  Mr. Nouri was denied his right to effective assistance of counsel.

Proposition 5:  The district court improperly excluded key evidence pursuant to the State's rape shield act.

Proposition 6:  Mr. Nouri's sentence is excessive.

Proposition 7:  The cumulative effect of the numerous errors require that this case be remanded for a new trial or that Mr. Nouri's sentence be modified.

See Dkt. # 9-1.  In an unpublished summary opinion, filed December 20, 2001, in Case No. F-2000-1399, the OCCA affirmed the Judgment and Sentence of the trial court. See Dkt. # 9-3. After the OCCA affirmed his Judgment and Sentence on direct appeal, Petitioner did not seek certiorari review in the United States Supreme Court.

On August 23, 2005, Petitioner filed an application for post-conviction relief.  See www.oscn.net.  The state district court recognized two propositions of error, as follows:

1.  Mr. Nouri received ineffective assistance of trial counsel for failure to utilize the necessary experts to challenge the State's case.

2.  Mr. Nouri received ineffective assistance of appellate counsel.

See Dkt. # 9-4 at 3-4.  On October 16, 2006, in compliance with a directive from the OCCA to make further findings of fact and conclusions of law, the state district court denied post-conviction relief.

See Dkt. # 9-4. Petitioner appealed. On December 7, 2006, in Case No. PC-2006-758, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 9-6.

On April 7, 2010, Petitioner filed a second application for post-conviction relief. See www.oscn.net. By order filed May 19, 2010, the state district court denied the application, after recognizing that Petitioner raised "numerous arguments," including the following:

1. Petitioner asserts he was wrongfully convicted on the basis of faulty medical and forensic and testimony of State's witnesses. Petitioner asserts the faulty medical and forensic evidence was presented by state expert Kathy Bell, Tulsa County Sexual Assault Nurse Examiner and "erroneous testimony was given by Kathy Bell and the alleged victim, [EM]."

2. The Petitioner asserts that newly discovered evidence which was unavailable at the time of his Direct Appeal proves which proves [sic] his innocence.

3. Although not specifically asserted as a proposition, the Petitioner also essentially again argues ineffective assistance of counsel in that he states that "trial counsel did not present available evidence to challenge DNA evidence presented by these witnesses and as a result Mr. Nouri was convicted . . . ."

See Dkt. # 9-7. The state district court also noted that Petitioner claimed in his second application for post-conviction relief that he had "now obtained New and Previously unavailable evidence which conclusively refutes the medical findings of the states [sic] witness, Kathy Bell and substantiates his claim of Actual Innocence." Id. at 6. After the state district court denied relief, Petitioner appealed. On October 5, 2010, in Case No. PC-2010-557, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 9-9.

On December 16, 2010, Petitioner filed his pro se federal petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner raises one (1) claim: "Petitioner is actually, factually and/or legally innocent of the crime for which he has been convicted and thus is being held in violation of the Constitution and laws of the United States." See Dkt. # 1 at 17. In response to the petition,

Respondent argues that (1) Petitioner is not entitled to habeas relief on his freestanding claim of actual innocence, and (2) the petition is time barred. See Dkt. # 9. Petitioner replied, arguing that his habeas claim is not a freestanding claim of actual innocence and that his petition is not time barred because he is entitled to equitable tolling. See Dkt. # 12.

## *ANALYSIS*

### A. Freestanding claim of actual innocence

As stated above, Petitioner identifies one proposition of error in his petition: that he is actually innocent of the crime of which he was convicted. See Dkt. # 1 at 4, 17. Respondent argues that Petitioner is not entitled to habeas review of a freestanding claim of actual innocence. See Dkt. # 9 at 3. In his reply (Dkt. # 12), Petitioner links his actual innocence claim to other "sub-propositions" of error identified in the text of the petition, including that the prosecution proceeded with testimony known to be false, that his rights under the Confrontation Clause were violated, and that the medical and forensic evidence presented by the State was faulty. See id. at 2-3.

The Supreme Court has acknowledged that the question of whether proof of actual innocence gives rise to a federal constitutional right to be released from custody remains open. District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71-72 (2009). Nonetheless, in Herrera v. Collins, 506 U.S. 390, 400 (1993), the Court refused to endorse a freestanding claim of actual innocence based on newly discovered evidence. See also LaFevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) (holding that "an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus"); Stafford v. Saffle, 34 F.3d 1557, 1561 (10th Cir. 1994).

In this case, Petitioner clarifies in his reply that he couples his claim of actual innocence with other allegations of constitutional error at trial. See Dkt. # 12. As a result, the claim is not "freestanding" and, for that reason, the Court need not determine whether habeas corpus relief on Petitioner's claim of actual innocence is foreclosed. However, for the reasons discussed below, the Court finds the petition is time barred.

**B.  Challenges to conviction are time-barred**

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted April 24, 1996, established a one-year limitations period for habeas corpus petitions as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). In general, the limitations period begins to run from the date on which a prisoner's conviction becomes final, but can also commence under the terms of § 2244(d)(1)(B), (C), and (D). In addition, the limitations period is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period. § 2244(d)(2).

5

To the extent Petitioner raises constitutional claims challenging his conviction, his claims are time barred. Under 28 U.S.C. § 2244(d)(1)(A), Petitioner filed his habeas petition after expiration of the one-year limitations period. Petitioner's conviction became final on March 20, 2002, after the OCCA concluded direct review on December 20, 2001, and the 90 day time period for filing a petition for writ of certiorari in the United States Supreme Court had lapsed. See Locke v. Saffle, 237 F.3d 1269, 1273 (10th Cir. 2001). As a result, Petitioner's one-year limitations clock began to run on March 21, 2002, see Harris v. Dinwiddie, 642 F.3d 902, 907 n.6 (10th Cir. 2011), and, absent a tolling event, a federal petition for writ of habeas corpus filed after March 21, 2003, would be untimely. See United States v. Hurst, 322 F.3d 1256 (10th Cir. 2003) (applying Fed. R. Civ. P. 6(a) to calculate AEDPA deadline).

Under 28 U.S.C. § 2244(d)(2), the limitations period was tolled, or suspended, during the pendency of a "properly filed" post-conviction proceeding. See Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). However, Petitioner did not file his applications for post-conviction relief until after the one-year limitations period had already expired. Petitioner's first application for post-conviction relief was not filed until August 23, 2005, or more than two (2) years after the March 21, 2003, deadline. A collateral petition filed in state court after the limitations period has expired no longer serves to toll the statute of limitations. See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."); Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001). As a result, the post-conviction proceedings commenced by Petitioner after expiration of the limitations period did not toll the limitations period.

Petitioner filed his petition on December 16, 2010, or more than seven (7) years after expiration of the one-year limitations period. Therefore, unless Petitioner demonstrates that he is entitled to other statutory or equitable tolling, his petition is clearly untimely.

In his reply to Respondent's response, see Dkt. # 12, Petitioner argues that he is entitled to equitable tolling and that he can overcome the limitations bar because "newly discovered" evidence supports his claim that he is actually innocent. Petitioner is correct that a claim of actual innocence may overcome the bar resulting from the one-year statute of limitations. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013); Laurson v. Leyba, 507 F.3d 1230, 1232 (10th Cir. 2007) ("A claim of actual innocence may toll the AEDPA statute of limitations."). The Tenth Circuit has "stress[ed] that this actual innocence exception is rare and will only be applied in the extraordinary case." Lopez v. Trani, 628 F.3d 1228, 1231 (10th Cir. 2010) (internal quotation marks omitted). To take advantage of the "actual innocence" gateway, a habeas petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup v. Delo, 513 U.S. 298, 316 (1995). The petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. This new evidence must be sufficient to "show that it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Id. at 327; see also House v. Bell, 547 U.S. 518, 536-37 (2006).

In addition, the statute of limitations contained in § 2244(d) is not jurisdictional and may be subject to equitable tolling. See Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998); Gibson v.

Klinger, 232 F.3d 799, 808 (10th Cir. 2000). To be eligible for equitable tolling, a petitioner must make a two-pronged demonstration: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)), so as to prevent him from timely filing his habeas petition. A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "'show specific facts to support his claim of extraordinary circumstances and due diligence.'" Id. (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)).

Upon careful review of the "new evidence" provided by Petitioner, the Court finds that, at best, it is impeachment evidence and does not serve to demonstrate Petitioner's actual innocence. The record provided by Respondent includes the transcript from Petitioner's jury trial. See Dkt. # 11. At trial, the prosecution presented substantial evidence of Petitioner's guilt, including the testimony of the victim, Petitioner's stepdaughter; the testimony of Kathy Bell, the Sexual Assault Nurse Examiner; and the testimony of a criminalist for the Oklahoma State Bureau of Investigation (OSBI), Thomas Joseph Gibson, Jr. Petitioner's stepdaughter testified that on July 23, 1998, Petitioner sodomized and raped her. See Dkt. # 11, Tr. Vol. III at 572-78. Bell testified that she examined the victim after the rape and observed a tear in her genitalia. See Dkt. # 11-1, Tr. Vol. IV at 820. Bell described the tear as "an injury that went down into the – past that outer layer of tissues, a stretching-type of injury, a blunt force injury, that is classified as a tear. And it is the largest – one of the largest ones that I've seen in my experience of doing exams." Id. at 832. On cross-examination, Bell testified that she could not rule out that the tear was the result of fingers being

forced into the victim's vagina.[2] Id. at 860, 869. Gibson testified that DNA extracted from a swab of the victim's pubic region contained DNA consistent with that of Petitioner. See Dkt. # 11-3, Tr. Vol. VI at 1206, 1210, 1223. In addition, DNA extracted from the victim's underwear matched the DNA of Petitioner. Id. at 1229.

In support of his habeas claim of actual innocence, Petitioner attaches to his petition the following "new evidence": the Affidavit of Laura A. Schile, dated April 15, 2008; the "Sexual Assault Nurse Examiner SANE Development & Operation Guide"; Oklahoma Attorney General Opinion No. 06-16, dated May 3, 2006[3]; a Tulsa Police Department record, dated July 23, 1998, authorizing treatment of the victim in this case; the transcription of a recorded interview of Kathy Bell by Roger L. Roberts, a CLEET certified private investigator, dated July 8, 2009; a copy of the

---

[2]The victim, who was fourteen (14) years old at the time of the incident, testified that just before she was raped by Petitioner, she and her boyfriend were in her bedroom engaging in sexual activity. See Dkt. # 11, Tr. Vol. III at 561- 64. Although she had removed all of her clothing, her boyfriend remained clothed. Id. at 562. She testified that he inserted his fingers in her vagina. Id. Their activity was interrupted when Petitioner returned home unexpectedly and entered the victim's bedroom. Id. at 564-65. Petitioner punched her boyfriend in the face. Id. at 565. The victim testified that after Petitioner retrieved a handgun, threatened to shoot her boyfriend, and forced her boyfriend to leave, Petitioner then sodomized and raped her. Id. at 568-75.

[3]In the opinion provided by Petitioner, the Oklahoma Attorney General found as follows:

> Title 59 O.S. 2001, § 731.3 requires that when a diagnosis of a human ill is to be made by a physician, including an examination of a child suspected to have suffered sexual abuse, it must be performed by a physician currently licensed by the state of Oklahoma. Under the provisions of 21 O.S. 2001, § 142.20, a medical examination of a child suspected to be a victim of sexual abuse for the procurement of evidence to aid in the investigation and criminal prosecution of the sexual assault offense is a forensic examination. Thus, for purposes of licensure, whether entitled medical or forensic, the examination must be performed by a licensed physician within the scope of practice of that physician's license.

See Dkt. # 1, Ex. C.

Oklahoma Supreme Court opinion, dated September 21, 2010, reflecting the suspension of Gloyd McCoy from the practice of law[4]; a copy of the OCCA's order, entered October 3, 2006, as part of Petitioner's first post-conviction appeal, Case No. PC-2006-758, directing the state district court to enter "a proper order containing findings and conclusions regarding the issues presented"; a partial copy of the state district court's order denying Petitioner's first application for post-conviction relief, filed October 16, 2006; and a copy of the OCCA's order, filed October 5, 2010, in PC-2010-557, affirming the district court's denial of Petitioner's second application for post-conviction relief. See Dkt. # 1, Exs. A-E, H-K. Petitioner focuses his claim of actual innocence on his belief that the "new evidence,"specifically Schile's affidavit and Roberts' interview of Bell, supports his claim that the tear observed by Bell was not a fresh injury and had to pre-date the rape. Id. at 19-22.

However, none of the evidence provided by Petitioner is "new" because it relies on facts that were available to him at the time of his trial. See Cummings v. Sirmons, 506 F.3d 1211, 1223-24 (10th Cir. 2007) (stating that new reliable evidence is required to succeed on actual innocence claim). Testimony concerning the age of the tear in the victim's genitalia could have been elicited at trial during Bell's testimony. Furthermore, as noted by Respondent, appellate counsel argued on direct appeal that significant evidentiary weaknesses, including the lack of blood from the victim at the scene, along with trial counsel's failure to present evidence regarding the reliability of the DNA evidence, contributed to errors resulting in an unfair trial. See Dkt. # 9-1 at 8, 27-30. The

---

[4]McCoy served as Petitioner's appellate counsel in 2001. In its 2010 order suspending McCoy from the practice of law, the Oklahoma Supreme Court discussed multiple grievances filed against McCoy based on "representations McCoy undertook from March of 2005 through April of 2008, a span of three years." See Dkt. # 1, Ex. H. Thus, the incidents resulting in McCoy's suspension from the practice of law post-dated McCoy's representation of Petitioner by at least four (4) years.

evidence provided by Petitioner in this habeas action simply bolsters those arguments that were presented and rejected long ago on direct appeal. In addition, although the "new evidence" may suggest another interpretation of the injury observed by Bell, none of the evidence presented by Petitioner in support of his claim of "actual innocence" would cause a reasonable juror to question the validity of Petitioner's conviction in light of all the evidence presented at trial. Thus, the Court finds that Petitioner's claim of actual innocence is insufficient to overcome the statute of limitations bar and does not entitle him to equitable tolling.

The Court further finds that Petitioner has failed to demonstrate entitlement to equitable tolling on any other basis. In his petition (Dkt. # 1), Petitioner complains that his appellate counsel, Gloyd McCoy, failed to investigate and obtain documents supporting his claim of actual innocence. Petitioner also claims that McCoy "failed to pursue and file petitioner's Federal Habeas Relief in a timely manner, although he had been paid in advance by petitioner to represent him up to and through the federal process." See id. at 6. Petitioner fails to provide any evidence supporting his claims regarding his attorney. Significantly, however, "[h]abeas counsel's negligence is not generally a basis for equitable tolling because '[t]here is no constitutional right to an attorney in state post-conviction proceedings.'" Fleming v. Evans, 481 F.3d 1249, 1255 (10th Cir. 2007) (quoting Coleman v. Thompson, 501 U.S. 722, 752 (1991)). "The rationale is that attorney negligence is not extraordinary and clients, even if incarcerated, must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures." Id. at 1255-56 (quoting Modrowski v. Mote, 322 F.3d 965, 968 (7th Cir. 2003)). In other words, a habeas petitioner "must be diligent in filing his own claims." Stanley v. McKune, 133 F. App'x 479, 480 (10th Cir. May 23, 2005)

(unpublished).[5] Petitioner's misplaced reliance on his attorney for assisting with challenges to his conviction and sentence does not explain why Petitioner waited more than three (3) years after conclusion of his direct appeal to file his first application for post-conviction relief, or why he waited more than three (3) more years after the OCCA affirmed the denial of his first application for post-conviction relief to file his second application. Nothing in the record suggests that Petitioner's attorney actively deceived him with regard to post-conviction or habeas corpus representation. See Fleming, 481 F.3d at 1255-57 (holding that petitioner was entitled to equitable tolling where former counsel actively deceived petitioner over several months into believing he was diligently pursuing petitioner's legal remedies when, in fact, he was not); Holland v. Florida, 560 U.S. 631, 651-52 (2010) (reiterating that equitable tolling principles do not extend to attorney conduct that can be characterized as "garden variety" or "excusable neglect"). Petitioner makes no argument and cites no evidence demonstrating that his delay was due to extraordinary circumstances beyond his control. Yang, 525 F.3d at 928. Petitioner is not entitled to equitable tolling.

In conclusion, the Court finds that Petitioner has failed to meet "the demanding standard for establishing actual innocence." Woodward v. Cline, 693 F.3d 1289, 1294 (10th Cir. 2012). He has not demonstrated entitlement to equitable tolling and has not overcome the statute of limitations bar. The petition for writ of habeas corpus shall be dismissed as time barred.

---

[5]This unpublished opinion is cited for persuasive value. *See* 10th Cir. R. 32.1(A).

**Certificate of Appealability**

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's procedural ruling resulting in the dismissal of the petition as time barred is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk of Court shall note on the record the substitution of Jim Farris, Warden, as party respondent.

2. The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice** as barred by the one-year statute of limitations.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this matter.

**DATED** this 19th day of February, 2014.

*Terence Kern*

**TERENCE KERN**
**United States District Judge**